<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| YAISHA T.,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 2:24-cv-07993 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Yaisha T.'s ("Plaintiff") appeal of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. § 405(g), and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1383(c)(3). (ECF Nos. 1, 15.) The Commissioner filed an opposition on April 11, 2025. (ECF No. 16.) As of the date of this Opinion, Plaintiff has not filed a reply, which was due on April 25, 2025, pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Having reviewed and considered the submissions filed in connection with this appeal and having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, the matter is **REMANDED** for further proceedings.

1

I.    **BACKGROUND**

A.    **Procedural History**

This case arises out of Plaintiff's challenge to the Commissioner's denial of her application

for SSI and DIB. (*See* ECF Nos. 1, 15.) On October 24, 2018, Plaintiff applied for SSI and DIB,

alleging her disability beginning October 1, 2018, due to orthopedic, neurological, diabetic, and

psychiatric conditions. (*See* ECF No. 1 ¶ 5.) The SSA initially denied Plaintiff's claim on April

24, 2019, and upon reconsideration on July 25, 2019. (ECF No. 4 (Transcript of Proceedings

("Tr.")) at 137–42, 144–49.)

On August 23, 2019, Plaintiff filed a written request for a hearing (*id.* at 150), and on July

17, 2020, Administrative Law Judge Mark Solomon ("ALJ Solomon") held a telephonic[1] hearing

regarding Plaintiff's claim (*id.* at 13–33). In a decision dated August 27, 2020, ALJ Solomon found

Plaintiff was not disabled within the meaning of the Act because she could perform work existing

in significant numbers in the national economy. (*Id.* at 27–28.) ALJ Solomon's decision became

the final decision of the Commissioner after the Appeals Council denied Plaintiff's request for

review on January 6, 2021. (*Id.* at 1–6.)

Having exhausted her administrative remedies, Plaintiff filed an appeal with the Court

seeking review of ALJ Solomon's decision under docket number 2:21-cv-04048. The Honorable

Madeline Cox Arleo, U.S.D.J. heard oral argument on the matter on December 15, 2022. (*Id.* at

1032.) The following day, Judge Arleo issued an order memorializing her bench decision and

vacating and remanding this matter for further proceedings. (*Id.* at 1033–34.) Judge Arleo's Order

included specific instructions for remand, including: (1) "the ALJ should expressly consider the

---

[1] Due to the extraordinary circumstances presented by the Coronavirus Disease 2019 ("COVID-19") Pandemic, all participants attended the hearing by telephone. (Tr. at 16.)

cumulative effects of Plaintiff's obesity on her other impairments at Step 3, and thereafter, in a way that would permit meaningful judicial review," (2) "the ALJ should provide an explanation as to Plaintiff's ability to sit in the residual functional capacity ('RFC') assessment," and (3) "Plaintiff is permitted to provide additional evidence related to the effect of the combination of Plaintiff's obesity and her other impairments." (*Id*. at 1033.)

On April 11, 2023, the Appeals Council issued an order remanding this case to an administrative law judge for further proceedings consistent with Judge Arleo's Order. (*Id*. at 1037–42.) The post-remand hearing was held before Administrative Law Judge Leonard Costa ("ALJ Costa") on February 15, 2024. (*Id*. at 974–1004.) ALJ Costa issued his decision on April 17, 2024, denying disability, finding Plaintiff has the RFC to perform sedentary work. (*Id*. at 958–64.) Plaintiff filed this appeal with the Court seeking review of ALJ Costa's decision on July 24, 2024. (ECF No. 1.)

### B.    Factual Background

Plaintiff filed for SSI and DIB on October 24, 2018 claiming a herniated disc, sciatica, anxiety, and spinal stenosis, and the record showed that Plaintiff was obese with a body mass index above 30. (*See* Tr. at 80, 1016.) At the time of her first hearing, Plaintiff was 5'6" tall and weighed 340 pounds. (*Id*. at 48.) She testified that she underwent gastric sleeve surgery on May 10, 2016, which helped her with her previous diagnoses of diabetes, high blood pressure, and gout for a period of time, until her "back got worse in October 2018." (*Id*. at 48, 840.) Plaintiff reported possible needing "to have surgery due to nerve damage on the left side of her body from her lower back to down her neck." (*Id*. at 840.)

### 1.  First Administrative Hearing and ALJ Solomon's Determination

At the time of Plaintiff's first hearing before ALJ Solomon on July 17, 2020, Plaintiff was a forty-year-old female with a GED. (*Id*. at 36–39.) Over the years leading up to the hearing, Plaintiff held several jobs, including serving as a partial live-in home health aide, a certified nurse assistant, a transportation aide, and a companion aide. (*Id*. at 50–53, 266.) Though Plaintiff filed her claim in October 2018, she continued to work full-time for the Sinai Center for Rehabilitation until on or about October 18, 2019. (*Id*. at 39–40.) Plaintiff testified that she could no longer serve as a transportation aide because she was having "constant pain" in her back (specifically, her lower back) and numbness on her left side which made it hard or impossible to get in and out of the transportation van. (*Id*. at 39–40, 47.) Plaintiff additionally testified that she worked for Heart to Heart Healthcare as a companion aide two days a week from December 2019 through March 2020. (*Id*. at 40.)

Plaintiff testified that due to her pain and numbness in her lower back and left hip, she "can [only] sit down for about ten minutes before [she] ha[s] to try to get up and move or do something," but that she can only stand up for approximately ten-to-fifteen minutes using a cane. (*Id*. at 43–44.) Plaintiff stated that she first started using her cane in 2018 while she was still working. (*Id*. at 44.) She first began to use prescription pain medications (Percocet and Oxycodone) around 2015. (*Id*. at 44–45.) Plaintiff takes medication for her anxiety and depression, which she testified was "somewhat controlled," but that she still suffered from episodes of "increased heart rate" and "stomach symptoms" for five-to-ten minutes "maybe once a week" since approximately 2014. (*Id*. at 45–46.)

Plaintiff reported to clinical psychologist Janet Sotomayor, PhD, for a consultative examination dated March 27, 2019. (*Id*. at 839–43.) At the time of the evaluation, Plaintiff was

working part-time as a nursing assistant at a nursing home facility, working on weekends and overnight shifts. (*Id*. at 840.) She primarily complained of physical pain due to her sciatica and to her herniated disc, which she reported was "a result of a combination of work and a history of slipping and falling both at work and outside of work." (*Id*.) Plaintiff also complained of feeling depressed and anxious because she was unable to work like she used to but admitted she had been taking Xanax to manage her symptoms since 2003/2004. (*Id*.) Dr. Sotomayor determined Plaintiff had major depressive disorder, which was attributable "to a history of depression and depression related to her current limitation to mobility. The results of present evaluation appeared to be consistent with psychiatric problems which may interfere with the claimant's ability to function on a daily basis." (*Id*. at 842.) Dr. Sotomayor noted Plaintiff was able to dress, bathe, and groom herself independently on a daily basis, and that Plaintiff was "capable of attending to household chores, cooking meals for herself, and doing her laundry" depending on her "physical pain and level of motivation." (*Id*.) She further found Plaintiff was "capable of reading, using a computer, and using a phone," and that Plaintiff could use public transportation, despite being unable to use a motor vehicle. (*Id*.)

Harris N. Rowzie, M.S., L.P.C., C.C.M., licensed vocational expert, testified that Plaintiff's employment history involves rules performed at the light-to-medium exertional level based on Plaintiff's testimony. (*Id*. at 54.) However, Rowzie testified there are positions within the national economy for someone in Plaintiff's position, including "escort vehicle driver," a sedentary, unskilled role with approximately 22,000 jobs in the national economy; "document preparer," a sedentary, unskilled role with approximately 47,000 jobs in the national economy; "photocopy machine operator," a light, unskilled role with approximately 18,000 positions nationally; and "marker," a light, unskilled job with approximately 36,000 jobs available in the

national economy. (*Id*. at 27, 54–58.) Rowzie testified that Plaintiff would still be able to perform these sedentary jobs "with the ability to sit for six hours and stand and walk for a total of two hours and could carry up to ten pounds occasionally and five pounds frequently," and other restrictions. (*Id*. at 57.) However, Rowzie stated that Plaintiff would not be able to perform these jobs should she have to switch positions from sitting to standing every ten minutes. (*Id*. at 56.) In Rowzie's opinion, an individual can only take off a maximum of ten percent of the time for the individual to keep his job. (*Id*. at 56–57.)

ALJ Solomon found Plaintiff was not disabled within the meaning of the Act from October 1, 2018, the alleged onset date of Plaintiff's disability, through August 27, 2020, the date of the decision. (*Id*. at 13–33.) ALJ Solomon found Plaintiff had engaged in substantial gainful activity from October 2018 through October 2019, as Plaintiff's quarterly earnings during this time "r[o]se above the threshold for substantial gainful activity." (*Id*. at 18–19.) However, because Plaintiff testified that she ceased work on October 18, 2019, ALJ Solomon continued with the five-step sequential evaluation process for the period after that date and continuing. (*Id*. at 19.) Following this analysis, ALJ Solomon concluded Plaintiff suffered from lumbar degenerative disc disease, obesity, bilateral pes planus and hammertoes, and diabetes with diabetic polyneuropathy, which significantly limit Plaintiff's ability to perform basic work activities, but that Plaintiff's "mental impairments of generalized anxiety disorder and major depressive disorder" did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and [is] therefore nonsevere." (*Id*.)

In making this finding, ALJ Solomon considered the four broad functional areas of mental functioning, finding: (1) Plaintiff had a mild limitation with understanding, remembering or applying information, based on Dr. Sotomayor's January 2020 consultative report concluding

6

Plaintiff "exhibited logical and coherent thought processes, intact comprehension, intact immediate memory, and the ability to recall two out of three objects after a delay," as well as Plaintiff's statements and testimony "that she retained the ability to drive, pay bills, handle a savings account, read, and watch television"; (2) Plaintiff had no limitation interacting with others, as Plaintiff testified "she lived with her brother, who assisted her with activities of daily living" and further stated in her function report that she attended church; (3) Plaintiff had a mild limitation concentrating, persisting, or maintaining pace, as Plaintiff testified "her impairments affected her ability to concentrate," and regarding her weekly panic attacks, but was "performing full time work with earnings above substantial gainful activity at the time of that examination"; and (4) Plaintiff had a mild limitation adapting or managing oneself, as she testified "she relied upon her brother for most of her activities of daily living," but "stated in her function report that she retained the ability to prepare her own meals, fold clothes, sweep, drive a car, shop in stores, pay bills, and handle a savings account." (*Id*. at 19–20.)

ALJ Solomon ultimately found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*. at 21–22.) He concluded Plaintiff had the RFC to perform light work because Plaintiff could

> sit for six hours in an eight-hour workday; stand and/or walk for four hours total in an eight-hour workday; lift and carry 20 pounds occasionally and 10 pounds frequently; occasionally climb balance, stoop, and climb ramps and stairs; and never kneel, crouch, or crawl. She is able to understand and carry out simple instructions, make simple work-related decisions, adapt to routine changes in the workplace, maintain attention and concentration for repetitive and routine work, and have routine contact with supervisors, co-workers, and the general public.

(*Id*. at 22–26.) Though ALJ Solomon determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*. at 23.)

Regarding Plaintiff's spine, feet, diabetes, and neuropathy impairments, ALJ Solomon acknowledged Plaintiff's testimony regarding her pain, stiffness, numbness, tingling, and burning sensation in the lower extremities, but concluded her "physical examination findings showed no tenderness to palpitation, full range of motion, normal reflexes, intact sensation, normal strength, and no edema, cyanosis, or clubbing." (*Id*. at 23.) ALJ Solomon relied on the April 2019 (during the period of Plaintiff's substantial gainful activity) report from the consultative examination with Alan Friedman, M.D., who noted Plaintiff exhibited a mildly antalgic gait and a limited range of motion in the lower extremities, but found Plaintiff "exhibited full strength in the bilateral upper and lower extremities, intact sensation, normal muscle tone, intact fine and gross motor coordination, and full range of motion of the upper extremities," as well as noting Plaintiff "was able to ascend and descend from the examination table and put on shoes and socks independently." (*Id*.) ALJ Solomon acknowledged that Plaintiff's obesity was a "severe impairment," which "could reasonably be expected to exacerbate the claimant's other symptoms and impairments." (*Id*. at 24.)

Ultimately, ALJ Solomon concluded Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and is therefore not disabled under the Act. (*Id*. at 28.)

## 2.  Second Administrative Hearing and ALJ Costa's Determination

Following Judge Arleo's Order[2] vacating ALJ Solomon's holding, Plaintiff appeared for a second hearing before ALJ Costa on February 15, 2024. (*Id*. at 974–1004.) ALJ Costa noted Plaintiff amended her disability onset date to October 1, 2019. (*Id*. at 983.) At the time of the second hearing, Plaintiff was 43 years old, 5'6" tall, and weighed approximately 360 pounds. (*Id*. at 983-84.) During the hearing, Plaintiff testified that she lived alone in a multi-level apartment building. (*Id*.) Plaintiff stated she had problems with the stairs in her apartment building, and that she only leaves to go out if she absolutely has to. (*Id*. at 984.) Plaintiff stated she ambulated with a cane, but that she was able to drive "sometimes." (*Id*. at 984–85.)

Regarding living on her own, Plaintiff testified she is able to care for herself independently, meaning she is "able to take care of [her] personal needs, shower, dress and all." (*Id*. at 994–95.) Plaintiff stated that she sometimes needed assistance cooking and cleaning, and that her family will either come and cook for her or bring her food once or twice a week. (*Id*. at 995.) However, Plaintiff's family does her laundry for her. (*Id*.) Plaintiff further confirmed she still suffered from depression and anxiety. (*Id*. at 992.) She claims she experiences "really bad panic attacks" for approximately thirty minutes two times per week. (*Id*. at 992–93.)

Plaintiff testified regarding her carpal tunnel surgery on her left wrist in 2021, claiming it helped "[j]ust a little bit," but that she still had pain and numbness in her left arm. (*Id*. at 986.) Plaintiff further testified she also has pain and numbness in her right arm, but she has not yet undergone surgery to address this because she would need family to stay with her and help her

---

[2] On remand, Judge Arleo specifically instructed the ALJ to "expressly consider the cumulative effects of Plaintiff's obesity on her other impairments," and to "provide an explanation as to Plaintiff's ability to sit in the residual functional capacity ('RFC') assessment." (Tr. at 1033–34.) Judge Arleo's Order also allowed Plaintiff "to provide additional evidence related to the effect of the combination of Plaintiff's obesity and her other impairments." (*Id*.)

during her recovery. (*Id*. at 987.) Plaintiff admitted the pain and numbness in her arms/hands cause her to "do things slowly as opposed to what [she] used to do [which was] what [she] consider[ed] normal." (*Id*. at 988.) Plaintiff further stated she also has pain in her back and left side and numbness in her left leg, which gets worse "[t]he more [she] tr[ies] to move around and tr[ies] to do little things." (*Id*. at 988–89.) Plaintiff also has problems with her feet, specifically she has gout in her right foot, which causes pain and numbness. (*Id*. at 989.)

At the time of the second hearing, Plaintiff was working as a companion in a senior living facility two days a week, every other weekend, for seven and a half hours a day. (*Id*. at 990–91.) While at work, Plaintiff helped feed residents, talked to residents, and generally kept residents company. (*Id*.) Plaintiff stated she would be in a lot of pain after a day at work, requiring assistance from her family to get into her apartment safely and pain medication when she got home. (*Id*. at 991.) Plaintiff further testified she would take pain medication before going into work, which Plaintiff's counsel noted could affect her attention and concentration. (*Id*. at 1003.) She stated that she could not work five days a week. (*Id*. at 992.) Plaintiff can only sit down for about fifteen minutes at a time before she starts experiencing pain, numbness, and tingling in her left leg requiring her to stand up. (*Id*. at 994.)

Rocco J. Meola, C.R.C., C.D.M.S., licensed vocational expert, testified that, given Plaintiff's current physical and mental limitations, Plaintiff could not return to her previous position as a nursing aide. (*Id*. at 996–97.) With Plaintiff's limitations, she could perform the following sedentary jobs: (1) scale operator, with 40,000 jobs existing nationally; (2) document preparer, with 35,000 jobs available in the national economy; and (3) cable worker, with 60,000 jobs nationally. (*Id*. at 997.) Upon further questioning and hypotheticals from ALJ Costa, Mr. Meola testified that implementing further limitations on handling and fingering (going from

10

frequent to occasional) would remove all previously offered jobs from that list, and "there would be no other job that [Mr. Meola] could offer with that limitation." (*Id*. at 998.) Mr. Meola further testified that if Plaintiff were to require approximately 15% of the workday off due to pain and other impairment related limitations, "that would preclude real work in the competitive labor market." (*Id*. at 997–98.)

ALJ Costa found Plaintiff had the following impairments: major depressive disorder, generalized anxiety disorder, carpal tunnel syndrome, degenerative disc disease, obesity, and asthma, which limit Plaintiff's ability to perform basic work activities. (*Id*. at 1049.) However, ALJ Costa found Plaintiff "failed to meet the burden of establishing that obesity is a severe impairment."[3] (*Id*.) ALJ Costa found that:

> While [Plaintiff's] obesity does not increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing, the effect obesity has upon [Plaintiff's] ability to perform routine movement and necessary physical activity within the work environment is given consideration in [Plaintiff's] residual functional capacity.

(*Id*. at 1051.) ALJ Costa based his decision "on a review of the medical evidence, including [Plaintiff's] reported activities of daily living and mental status examinations," particularly in that Plaintiff "report[ed] being able to shop in stores, manage money, read[] the newspaper, . . . not need[ing] reminders to go places, . . . not hav[ing] problems getting along with others including authority and follow[ing] instructions." (*Id*. at 1050.)

---

[3] ALJ Costa elaborated—"Specifically, there is no medical evidence, either opinion or otherwise, contained within the record that indicates any significant limitation in [Plaintiff's] mental and physical abilities to do one or more basic work activities based on this impairment." (*Id*. at 1049.)

Keeping this in mind, after careful consideration of the entire record, ALJ Costa found that Plaintiff had the RFC to perform sedentary work with restrictions.[4] (*Id*. at 1051.) In making his determination, ALJ Costa relied on Plaintiff's testimony that: "she obtained a GED," "[s]he lives on the third floor and uses the stairs," she experiences "tingling and numbness in the lower extremity," she has numbness and tingling due to her carpal tunnel, she "frequently drops things," and, "[a]t 5'6" and 360 pounds, she is obese." (*Id*. at 1052.) Explicitly,

> After careful consideration of the evidence, [ALJ Costa] finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the records for the reasons explained in this decision.

(*Id*.) ALJ Costa further declared "the medical evidence from [Plaintiff's] consultative examinations indicate that her symptoms do not preclude all work activity." (*Id*. at 1054.)

Ultimately, ALJ Costa concluded Plaintiff was not disabled under the Act—"[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform." (*Id*. at 1055.) In making this determination, ALJ Costa relied on Mr. Meola's testimony regarding different jobs available to Plaintiff in the national economy to determine that Plaintiff "is capable of making a

---

[4] Specifically, the restrictions included: "occasionally climb ramps and stairs; stoop; kneel; crouch; balance or crawl; never climb ladders, ropes or scaffolds, occasionally push/pull controls with the upper and/or lower extremities, frequently handle and finger objects, must use a cane to ambulate for more than a few feet or on uneven terrain, no exposure to extremes in environmental conditions or concentrated pulmonary irritants, frequent near and far visual acuity, occasional interaction with the general public; co-workers and supervisors; able to understand, remember and carry out simple instructions with only occasional changes to essential job functions and is able to make simple work-related decisions." (Tr. at 1051–52.)

successful adjustment to other work that exists in significant numbers in the national economy," thereby a finding of "not disabled" was appropriate. (*Id*. at 1055–56.)

## II.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

13

### III.  THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520.[5] First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(i). Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. Basic work

---

[5] Regulations for DIB and SSI are virtually identical. For the purposes of this appeal, further citations will only be made to the DIB regulations regarding disability evaluation, 20 C.F.R. § 404.1501, *et seq.* The parallel SSI benefits regulations are found under 20 C.F.R. § 416.901, *et seq.*

activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R.

§ 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R.

§ 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether

the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates

his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment

List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits.

*See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not

listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those

listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. §

404.1526. If there is more than one impairment, then the ALJ must consider whether the

combination of impairments is equal to any listed impairment. *Id.* An impairment or combination

of impairments is basically equivalent to a listed impairment if there are medical findings equal in

severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated at 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine[6] requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19-21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When

---

[6] Harmless error review, which requires the appellant to demonstrate harm, applies to administrative appeals. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).

substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV. DECISION

Plaintiff argues this Court must reverse the decision of ALJ Costa and remand Plaintiff's claims to the Commissioner for reconsideration in light of numerous deficiencies in ALJ Costa's decision. (ECF No. 15 at 8–37.)

### A.    ALJ Costa's Consideration of the Cumulative Effects of Plaintiff's Obesity

First, Plaintiff argues this Court must reverse and remand ALJ Costa's decision for failing to abide by Judge Arleo's remand order requiring the ALJ to (1) expressly consider the cumulative effect of Plaintiff's obesity on her other impairments at step three and thereafter, and (2) provide an explanation as to Plaintiff's ability to sit in its RFC assessment. (ECF No. 15 at 8–18.) Plaintiff contends ALJ Costa's decision failed to "integrate and explain the role played by [P]laintiff's morbid obesity as it combined with each severe impairment and the combination thereof." (*Id.* at 11.) Plaintiff contends the decision is replete with direct contradictions, claiming the decision acknowledged Plaintiff needed to use a cane to ambulate for more than a few feet while simultaneously concluding Plaintiff's gait is "generally normal." (*Id.* at 13.) Moreover, Plaintiff claims ALJ Costa's conclusions are unsupported by evidence and "offers no references, specific or otherwise, to any evidence which might possibly support [P]laintiff's ability to sit for 6 hours while performing competitive work activity." (*Id.* at 16.)

The Commissioner responds that ALJ Costa sufficiently explained why Plaintiff's obesity combined with her other impairments were not medically equivalent to any presumptively disabling list impairment and thereby fully complied with the District Court's order. (ECF No. 17 at 12–18.) Specifically, with respect to the decision's medical equivalence finding, the

Commissioner argues the ALJ "is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." (*Id*. at 13 (citing SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017).) However, the Commissioner argues ALJ Costa sufficiently considered and evaluated the impact of Plaintiff's obesity at step three, and "explained that he included extensive restrictions in the RFC finding to account for the functional effects of Plaintiff's obesity, but found 'the claimant's obesity does not meet or equal a listing.'" (*Id*. at 14 (quoting Tr. at 956).) The Commissioner cites to "the conclusions rendered by *four* state agency medical experts who agreed that Plaintiff's combined impairments, including her obesity, did not meet or medically equal any listed impairment," which ALJ Costa relied upon in making his step three determination." (*Id*. at 14–15.) The Commissioner notes Plaintiff did not offer any contrary medical conclusions to rebut this opinion and fails to identify the listed impairments that Plaintiff believes were medically equaled in this case. (*Id*. at 15–16.)

"[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). Meaningful review requires more than a "bare conclusion" or a "conclusory statement." *Burnett*, 220 F.3d at 119. However, meaningful review does not require an ALJ "to use particular language or adhere to a particular format in conducting [the] analysis." *Jones*, 364 F.3d at 505. Rather, when an ALJ "explicitly contemplate[s] . . . obesity at the appropriate step (i.e., when assessing [a plaintiff's] RFC)," the ALJ satisfies the burden imposed by *Diaz*. *Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015) (citing *Diaz*, 577 F.3d at 504); *see also Granados v. Comm'r of Soc. Sec.*, Civ. A. No. 13-0781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) ("An ALJ fulfills his obligation to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates

that he has done so and there is 'no reason not to believe him.'" (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008))). A claimant must demonstrate "*how* [the claimant's] obesity . . . affected her ability to perform basic work activities," not simply "that obesity *can* impair one's ability to perform basic work activities." *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (affirming denial of benefits where claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities").

First, Plaintiff challenges ALJ Costa's consideration of her obesity at steps three and four. (ECF No. 15 at 9–18.) However, ALJ Costa conducted a proper 20 C.F.R. § 404.1526(b) analysis, which addressed Judge Arleo's remand order:

> Finally, in response to the District Court's remand order to evaluate the claimant's obesity, as outlined in Social Security Ruling 19-2p and give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations, the undersigned has done the following. To address her obesity, the undersigned has limited the claimant to sedentary work; allowing her to stand/shift positions for 2-3 minutes; limiting her to occasional climbing ramps and stairs, stooping, kneeling, crouching, balancing, and crawling; but never climbing ladders, ropes, scaffolds, and allow her to use a cane to ambulate for more than a few feet or on uneven terrain, addresses her obesity.[7]

(*Id.* at 963.) Specifically, with regard to Plaintiff's lumbar spine, ALJ Costa determined there was no evidence of "an impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months." (*Id.* at 955.) Concerning Plaintiff's bilateral pes planus and hammertoes, ALJ Costa found "the claimant has

---

[7] *See Jones*, 364 F.3d at 505 (finding ALJ's step three determination adequate because ALJ's decision, "read as a whole," illustrated ALJ considered the appropriate factors).

degenerative and post-operative conditions of the bilateral knees, but the record shows that, outside of post-recovery periods, the claimant's gait was generally normal, and she does not use an assistive device."[8] (*Id*. at 956.) Regarding Plaintiff's diabetes, while ALJ Costa found Plaintiff's "diabetes mellitus disrupts the production of several hormones . . . the claimant's [diabetes] is well controlled."[9] (*Id*.) ALJ Costa specifically considered how Plaintiff's obesity would affect her RFC:

> Concerning her weight, SSR 19-2p provides that obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual might have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balance, stooping, and crouching. In this case, while there [are] some signs of limitations in functioning caused by her weight, the[re] is no evidence that the claimant could not perform sedentary work which would allow her to sit, stand, and walk up to 6-hours each in an 8-hour workday. Specifically, the undersigned has limited the claimant to sitting up to 6 hours per day but no more than one half hour at a time, and then she would need to stand/shift positions for 2-3 minutes. Further, the undersigned has limited the claimant to occasional climbing ramps and stairs, stooping, kneeling, crouching, balancing, and crawling; but never climbing ladders, ropes, or scaffolds. Therefore, the claimant's obesity does not meet or equal a listing.

(*Id*. at 956.) ALJ Costa's analysis as a whole indicates he properly considered evidence regarding whether Plaintiff's obesity causes any limitations and found "some signs of limitations in functioning caused by her weight," but no evidence suggesting Plaintiff cannot perform sedentary

---

[8] To be sure, at the time of the second hearing, Plaintiff testified she lived by herself on the third floor of her apartment building. (Tr. at 984.)

[9] ALJ Costa further elaborated he found no evidence of hypoglycemia, diabetic ketoacidosis, or other disorders affecting blood glucose levels, and he found "no evidence that claimant cannot manage diabetes due to a mental disorder or inadequate treatment." (*Id*. at 956.) "Furthermore, there [is] no evidence . . . that either condition has required hospital treatment to correct the acute complications of dehydration, electrolyte imbalance, and insulin deficiency." (*Id*.)

work.[10] (*Id.*) Ultimately, ALJ Costa determined that "despite [Plaintiff]'s physical and mental impairments, [Plaintiff] can do a wide range of sedentary work with the above added postural, manipulative, environmental, and non-exertional limitations." (*Id.* at 964.)

Given ALJ Costa's thorough discussion of the record throughout his opinion, detailed explanation of why each of Plaintiff's impairments did or did not meet a listing, and statement concerning the combined effect of Plaintiff's impairments at step four, the Court finds no reason to disbelieve ALJ Costa's indications that he considered the combined effect of Plaintiff's impairments. *See, e.g., Andres F. v. Comm'r of Soc. Sec.*, No. 19-19527, 2022 WL 769972, at *6 (D.N.J. Mar. 14, 2022) (finding ALJ's analysis as a whole, including at step four, indicated ALJ properly considered plaintiff's obesity including at step three); *see Cherese M.B. v. Comm'r of Soc. Sec.*, Civ. A. No. 20-17718, 2024 WL 1270834, at *6–8 (D.N.J. Mar. 26, 2024) (finding ALJ discussed claimant's obesity during each step of process and explicitly stated he had considered claimant's obesity in combination with her other impairments, which "is sufficient to satisfy the standard set forth in *Diaz*"); *Leonardis v. Comm'r of Soc. Sec.*, Civ. A. No. 18-13098, 2020 WL 6281606, at *3 (D.N.J. Oct. 27, 2020) (finding ALJ's statement considered obesity in accordance with the applicable Social Security rulings along with a discussion of claimant's impairments was sufficient under Third Circuit law); *see also Trzeciak v. Colvin*, Civ. A. No. 15-6333, 2016 WL 4769731, at *5 (D.N.J. Sept. 12, 2016) (holding that, in a case where the ALJ failed to consider anxiety at step three but did so at step four, the ALJ "is not required to repetitively analyze each symptom at each step; the requirement is that the decision be subject to 'meaningful review' by a

---

[10] *See Gainey v. Astrue*, Civ. A. No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) ("ALJ's detailed analysis of the individual impairments and conclusion that Plaintiff did not have 'an impairment or combination of impairments' that met or equaled a listing is sufficient." (citation omitted)).

reviewing court" (quoting *Jones*, 364 F.3d at 505)). Regardless, Plaintiff has not "point[ed] to any medical evidence ignored by the ALJ that would show that [her] impairments medically equaled one of the listings." *Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146 (3d Cir. 2007). Accordingly, ALJ Costa's discussion of Plaintiff's obesity at step four indicates the ALJ meaningfully considered Plaintiff's obesity.

### B.    ALJ Costa's Findings Are Not Based on Substantial Evidence

RFC is the most work that a claimant can do despite his or her limitations, and it is "based on all the relevant evidence in [a] case record." 20 C.F.R. § 404.1545(a)(1). In making this determination, an ALJ is "free to accept some medical evidence and reject other evidence," so long as "he provides an explanation for discrediting the rejected evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014).

ALJ Costa found Plaintiff was capable of light, nonskilled work based on at least four expert assessments. (Tr. at 961–64.) He relied on the reports of Drs. Mary Ann Nicastro and Elois Phillips, who "both opined that the claimant could perform light work [with] some postural, and environmental limitations." (*Id*. at 961.) State agency consultative psychiatrists Drs. Leslie Williams and Fred Eisner found Plaintiff could "perform a wide array of daily activities" and was "capable of understanding instructions and maintaining pace and persistence in simple, routine work." (*Id*. at 88–89, 116–17, 962.)

However, with regard to Plaintiff's argument that ALJ Costa's decision "never explain[ed] why [P]laintiff can sit for 6 hours in an 8 hour workday or what evidence would suggest such an ability or what evidence was relied upon to render this finding," the Court is compelled to agree. (ECF No. 15 at 27.) While Drs. Nicastro and Phillips each concluded Plaintiff could sit for about six hours in an eight-hour workday (Tr. at 87–88, 128–30), ALJ Costa found these opinions

unpersuasive in making his determination because neither doctor was Plaintiff's treating doctor and because Plaintiff had confirmed diagnoses of lumbar degenerative disc disease, lumbar radiculopathy, obesity, bilateral pes planus and hammertoes, diabetes with diabetic polyneuropathy, carpal tunnel syndrome, major depressive disorder, and generalized anxiety disorder (*id.* at 961–962).[11] In fact, ALJ Costa specifically notes "[t]hese opinions did not take into account the claimant's obesity by limiting her to sedentary work, [and] they did not take into account the claimant's carpal tunnel syndrome by providing manipulative limitations." (*Id.* at 962.) Despite these documented misgivings, ALJ Costa adopts Drs. Nicastro's and Phillips' opinions that Plaintiff "can sit up to 6 hours per day but no more than one half hour at a time, and then would need to stand/shift positions for 2-3 minutes" without further explanation.[12] (*Id.*)

During her hearing, Plaintiff's lawyer represented to ALJ Costa that Plaintiff "can't do sedentary work five days a week, eight hours a day." (*Id.* at 982.) Plaintiff testified regarding her part-time work at a senior living facility, where she works as an aide for seven-and-a-half hours every other weekend. (*Id.* at 990–91.) Plaintiff stated she was in a lot of pain after working these shifts, requiring her to take pain medication that makes her sleepy and "slows [her] down." (*Id.* at 992.) Plaintiff further attested she can only work in the afternoons, not mornings, and she did not think she could work at this job for five days per week. (*Id.*)

ALJ Costa explicitly questioned Plaintiff regarding her ability to sit for periods of time:

Q. Ms. Thompson, just a couple follow up questions that I had. I

---

[11] ALJ Costa further noted Drs. Nicastro and Phillips "did not provide environmental limitations to address her use of [a] cane when ambulating more than a few feet or on uneven terrain." (Tr. at 962.)

[12] Interestingly, ALJ Costa then reiterates that he gives "no persuasiveness" to the opinions of Drs. Nicastro and Phillips because Plaintiff "must use a cane to ambulate for more than [a] few feet or on uneven terrain, [and] she can have no exposure to extremes in environmental conditions or concentrated pulmonary irritants[.]" (Tr. at 962.)

know that there's problems with walking and standing. How about sitting? Are you able to sit in one position for prolonged periods of time? Like for instance, when you're working at seven and a half hours or do you need to get up and down?

A. No, I need to get up and down.

Q. How long in your estimation, how long can you sit at one time before you need to get up and let's say stand for a couple minutes?

A. I can sit down for about 15 minutes.

Q. And then what happens when you're sitting, let's say you're sitting for a half hour, what begins to hurt you?

A. My left leg gets real numb and tingling where I have to stand up in pain.

(*Id*. at 994.) In direct response to ALJ Costa's question, Plaintiff tells him that she cannot sit for more than fifteen minutes at a time. (*Id*.)

The Court finds ALJ Costa's determination that Plaintiff could "sit up to 6 hours per day but no more than one half hour at a time, and then would need to stand/shift positions for 2-3 minutes," is not supported by substantial evidence. (*Id*. at 962.) ALJ Costa explicitly rejected the findings of Drs. Nicastro and Phillips but then adopted their conclusions, in direct contrast to Plaintiff's testimony, with no further explanation. (*Id*. at 961–62.) Moreover, there is evidence in the record from Forest Hills Physical Therapy, who was a regular treating provider to Plaintiff, noting Plaintiff had "pain and difficulty with prolong[ed] sitting and standing." (*Id*. at 384.)

This Court concludes remand of the matter for further consideration of Plaintiff's ability to sit and perform work is appropriate. Moreover, remand is appropriate even if, upon further examination of the medical evidence, the ALJ again finds that Plaintiff is able to sit up to six hours per day, standing/shifting for two-to-three minutes every half hour. *Cf. Zuschlag v. Comm'r of Soc. Sec.*, Civ. A. No. 18-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand,

the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, Civ. A. No. 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020 ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from [the physician].").

## V.    CONCLUSION

For the reasons set forth above, the Court **VACATES** the Commissioner's final determination and **REMANDS** the matter for further proceedings consistent with this Opinion. An appropriate order follows.

**Dated:** July 15, 2025                                 */s/ Brian R. Martinotti*
                                                        **HON. BRIAN R. MARTINOTTI**
                                                        **UNITED STATES DISTRICT JUDGE**